**In re GRAND JURY SUBPOENA TO MRS. C.D.**

**No. CIV. S-98-3334.**

United States District Court, D. Maryland.

Oct. 29, 1998.

Andrew Jay Graham, Kramon & Grahan, Baltimore, MD, for Plaintiff.

Lynne A. Battaglia, United States Attorney, Robert R. Harding, Assistant U.S. Attorney, Baltimore, MD, for Defendant.

*MEMORANDUM OPINION*

SMALKIN, District Judge.

Mrs. C.D. has filed a motion to quash the subpoena requiring her to appear before the grand jury to answer questions concerning her activities and transactions with members of an alleged conspiracy under investigation

---

for narcotics, racketeering, and firearms offenses. Because her husband, Mr. C.D., is one of the targets of the grand jury, Mrs. C.D. has asserted the privilege against adverse spousal testimony as the basis for her motion.

The Government counters that it is not seeking information against her husband, but instead wishes to question her about her dealings with other suspects under investigation. The Government thus argues that the spousal privilege should not apply, as Mrs. C.D .'s testimony would not implicate her husband. Mrs. C.D. contends, however, the Court should recognize the privilege here as "any testimony coerced ... under grand jury subpoena which will help to prove the existence of the conspiracy will simultaneously assist in proving the alleged charges against [Mr. C.D.]."

## DISCUSSION

The Federal Rules of Evidence provide that "the privilege of a witness ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed.R.Evid. 501. The Fourth Circuit has noted recently that the privilege against adverse spousal testimony "has been a feature of the common law for centuries." *United States v. Morris*, 988 F.2d 1335, 1338 (4th Cir.1993). In addition, the Supreme Court has upheld the spousal privilege, recognizing "its perceived role in fostering the harmony and sanctity of the marriage relationship." *Trammel v. United States*, 445 U.S. 40, 44, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). In light of the Supreme Court's decision in *Trammel*, the Fourth Circuit instructed:

> Given that the marital privilege is one that remains vital in modern jurisprudence and has been sanctioned by Congress and the Supreme Court, it is apparent that we should guard against turning the privilege into an empty promise. This is not to say that the scope of the privilege is never subject to change, rather that any change should be made with caution, and that trial

practices which undermine the privilege should be reviewed with a careful· eye. *Morris*, 988 F.2d at 1339 (citation omitted).

In determining the application of the spousal privilege to the facts currently before the Court, the Third Circuit's decision in *In re Grand Jury Matter*, 673 F.2d 688 (3d Cir.1982) provides helpful guidance. In that case, the court held that when "the Government openly seeks one spouse's testimony concerning the activity of a third party, who is alleged to have engaged in a common criminal scheme with a husband and his wife, and the Government thereby hopes also to reach the nonwitness spouse, the testimony sought is sufficiently adverse to the interests of the absent spouse to permit invocation of the privilege against adverse spousal testimony." *Id.* at 692. Applying the reasoning in *In re Grand Jury Matter*, Mrs. C.D. should be permitted to invoke the protection of the spousal privilege as evidence that she provides implicating other members of the criminal conspiracy would be imputed to her husband as a coconspirator. Under the Supreme Court's decision in *Pinkerton v. United States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), a party to a conspiracy is liable for the criminal acts of coconspirators that are in furtherance of the conspiracy and are reasonably foreseeable. *See also United States v. Aramony*, 88 F.3d 1369, 1379 (4th Cir.1996) ("The *Pinkerton* doctrine imposes vicarious liability on a co-conspirator for the substantive offenses committed by other members of the conspiracy when the offenses are during and in furtherance of the conspiracy.").

Thus, should Mrs. C.D. testify before the grand jury concerning the actions of members of the alleged conspiracy other than her husband, she would likewise incriminate her husband under the *Pinkerton* theory. In order to maintain the integrity of the privilege against adverse spousal testimony and the important societal interests that it furthers, Mrs. C.D. will not be compelled to testify before the grand jury. The "preservation of familial harmony and the institution of marriage through the spousal privilege is of paramount importance," *A.B. v. United States*, —— F.Supp.2d ——, ——, 1998 WL

641241, at *6 (D.Md. Sept.17, 1998), and would be frustrated by forcing Mrs. C.D. to answer questions before the grand jury about the criminal activities of Mr. C.D.'s alleged coconspirators.

Accordingly, a separate Order will be entered, granting the motion to quash.

## ORDER

For the reasons stated in a Memorandum Opinion, of even date, it is by the Court, this 29th day of October, 1998, ORDERED:

That the Motion to Quash Subpoena BE and it hereby IS, GRANTED.